It, therefore, appears, that Coleman was duly and legally admitted to citizenship; and that the legality of his admission was not invalidated by any act or omission which occurred either prior or subsequently to his admission. As he was legally admitted, it was proper for the court to give to him the certificate of citizenship which was given to him; and that certificate was not unlawfully issued or made. On this ground he is entitled to his discharge from arrest.

---

## Case No. 2,981.

### The COLEMAN, ETC.

[Brown, Adm. 456.][1]

District Court, E. D. Michigan. Sept., 1873.

COLLISION — INSUFFICIENT EQUIPMENT — RESPECTIVE LIABILITY OF TUG AND TOW—PLEADING.

1. A tug, whose chief officer also acts as wheelsman, is insufficiently manned, and every doubt as to her being in fault will be resolved against her.

2. The fact that she is fully manned, according to the custom of tugs plying on those waters, is no excuse.

3. In case of uncertainty or irreconcilable conflict of testimony between a tug and her tow, as to their respective manoeuvres, the fact that the tug is insufficiently manned will be regarded as a fault contributing to the collision.

4. Where the persons in charge of a tug and tow jointly participate in their control and management, the tug and tow are jointly liable for an injury done to a third vessel.

5. Objections to a libel for want of specific allegations of fault should be taken by exceptions, and if taken at the hearing, an amendment will be permitted.

6. An omission to state in the libel a material fact, peculiarly within the knowledge of the opposite party, as that one of the colliding vessels was improperly manned, will not be allowed to work an injury to the libellant, if the court can see there was no design on his part in omitting to state it.

This was a libel in rem, promoted by Michael B. Kean, owner of the schooner Ayr, for collision. On the 11th day of May, 1872, the schooner Ayr lay aground and helpless on the easterly channel bank of the dredged channel at the mouth of the Saginaw river. On the same day, while the Ayr so lay aground, and in the day time, the tug Coleman came down the same channel, with the schooner Foster in a tow by a line or lines astern. Although the channel is narrow,

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

yet there was sufficient room for the tug and tow to have passed the Ayr in safety. The Foster, however, when a little above where the Ayr lay, came near grounding on the opposite or westerly channel bank, and in the effort to keep her off, she was made to run into and collide with the Ayr, doing her considerable damage. The contest was mainly between the tug and the tow as to which should pay the damages done to the Ayr, there being no serious dispute as to the right of the Ayr to recover against the one or the other. On the part of the Foster it was insisted that she was without fault, and that the collision was caused wholly by the mismanagement and fault of the tug, and the following were insisted on: 1. That the threatened grounding of the Foster was caused by the tug towing her unnecessarily near the channel bank. 2. That in attempting to keep the Foster off the bank, the tug swung out into and across the channel further than was necessary, involving, as it did, the ultimate necessity of coming completely about and taking the Foster about with her, in attempting to do which the Foster was made inevitably to run into and collide with the Ayr as she did. 3. That the tug was not properly officered and manned. On the contrary, it was insisted on the part of the tug that she was without fault, and that the collision was caused solely on account of the following faults on the part of the Foster: 1. That her threatened grounding was caused by her sheering and not following in the wake of the tug. 2. That she was unseaworthy, in that her steering gear was out of order. 3. That she did not follow the tug in the attempt of the latter to keep off the channel bank.

H. B. Brown, for libellant.

W. A. Moore, for the Foster.

F. H. Canfield and G. V. N. Lothrop, for the tug Coleman.

LONGYEAR, District Judge. A large number of witnesses were examined, and a great amount of testimony taken on the part of each, the tug and the tow; and I believe it is safe to assert that, aside from the fact of the collision, there is but one other fact material to the controversy, as to which the testimony is not in the most direct and irreconcilable conflict. That one fact is, as to the manner in which the tug was officered and manned; and as that fact is, in my opinion, decisive of the case, I shall not make the attempt to find where the truth lies as to the other points in the case. I abandon such attempt all the more willingly, because I am satisfied it could only end in failure, or result at best in great doubt and uncertainty. The persons in charge of both the Coleman and the Foster knew the Ayr was aground, and were fully cognizant of the difficulties to be encountered, and ought to, if they did not, have fully comprehended the care and skill necessary, the one to tow and the other to be towed, in safety to themselves and the Ayr. The master of the tug remained on shore, and the towing was undertaken with the mate in command. This alone would not, however, necessarily constitute a fault. But the tug was without a wheelsman, the mate attempting to discharge that duty, besides that of master for the time being. In the case of The Victor [Case No. 16,933], recently decided, this court held this to be a fault, and used the following language: "The responsible character of the occupation of tugs requires that there should be some competent person in charge of their navigation, separate and distinct from the wheelsman, and who has no other duties when the tug is in actual service."

I have seen no occasion since to doubt the correctness of that decision. On the contrary, since making it, my attention has been called to three decisions of this court, namely, The Zouave [Case No. 18,221], The Armstrong [Id. 540], and The John Fretter [Id. 7,342], holding the same doctrine—the first two by my predecessor, and the last one by Associate Justice Swayne. In the last-named case Judge Swayne made use of the following strong language, which I can adopt in its full force. He said: "It is impossible, in the nature of things, that the captain or mate can perform properly his other duties and also that of lookout, and they ought not to attempt it." The same is certainly true, with equal if not greater force, in regard to the wheelsman. In the same case he further says, "that in such a case every doubt is to be resolved against the vessel committing such a fault." As we have already remarked, the grossly conflicting and contradictory character of the testimony leaves it in great doubt and uncertainty as to what particular manoeuvres of the two vessels, or of either, and which one was the immediate cause of the collision, in consequence of the unseaworthy condition of the tug in respect to her equipment of officers and men at the time. The doubt must be resolved against her, unless the answers contended for on the argument are sufficient to defeat a recovery against her on that account. Before noticing their answers, however, I will consider the case on the part of the Foster.

In Sturgis v. Boyer, 24 How. [65 U. S.] 110, 121, 122, the supreme court made use of the following language, the case being in some of its aspects very much like the one now under consideration: "Cases arise, undoubtedly, when both the tow and the tug are jointly liable for the consequences of a collision; as when those in charge of the respective vessels jointly participate in their control and management, and the master or crew of both vessels are either deficient in skill, omit to take due care, or are guilty of negligence in their navigation. Other cases may well be imagined where the tow alone would be responsible; as when the tug is

employed by the master or owners of the tow as the mere motive power to propel their vessel from one point to another, and both vessels are exclusively under the control, direction and management of the master and crew of the tow. * * * But whenever the tug, under the charge of her own master and crew, and in the usual and ordinary course of such an employment, undertakes to transport another vessel, which, for the time being, has neither her master nor crew on board, from one point to another, over waters where such accessory power is necessarily or usually employed, she must be held responsible for the proper navigation of both vessels. * * * Assuming that the tug is a suitable vessel, properly manned and equipped for the undertaking, so that no degree of negligence can attach to the owners of the tow, on the ground that the motive power employed by them was in an unseaworthy condition, and the tow, under the circumstances supposed, is no more responsible for the consequences of a collision than so much freight; and it is not perceived that it can make any difference in that behalf, that a part, or even the whole officers and crew of the tow are on board, provided it clearly appears that the tug was a seaworthy vessel, properly manned and equipped for the enterprise," etc.

To apply these doctrines to the present case: In the first place, those in charge of the respective vessels jointly participated in their control and management, or, in other words, each vessel was in the immediate charge and control of her own officers and crew, and so, under the law as above laid down, this comes within the class of cases in which both the tow and the tug may be jointly liable. In the second place, the tug, as we have seen, was not properly manned for the enterprise, and so this case comes also within the class of cases in which the tow may be held in fault for employing a motive power which was in an unseaworthy condition. That the tow should be held in fault, especially in view of the great doubt and uncertainty before mentioned concerning her condition and her conduct, I think scarcely admits of doubt. It results that both the tow and tug must be held jointly liable for the consequences of the collision, unless the answers to the above positions set up on the argument, which will now be considered, are sufficient to defeat a recovery.

The first objection to a recovery on the ground stated, viz: that the tug was not properly manned, is that there is no such specific fault charged or set up in the libel or other pleadings. It is true, the libel contains no specific allegations of fault against either vessel, the charge in that respect being in the most general terms imaginable, that the collision was caused "through the negligent and insufficient management of said tug, and schooner Foster." There are, however, two complete answers to the objection on this ground. Firstly, no exceptions having been taken to the libel, and the case having evidently been fully and fairly presented, so far as the matter in question is concerned, the court would direct the libel to be amended, if necessary to sustain a decree in favor of libellant. Secondly, in the case of The Syracuse, 12 Wall. [79 U. S.] 167, 173, the supreme court, in deciding an objection precisely like this one, and where it was expressly held that the libel was defective for want of such specific allegation, laid down the following rule: "But in admiralty, an omission to state some facts which prove to be material, but which cannot have occasioned any surprise to the opposite party, will not be allowed to work any injury to the libellant, if the court can see there was no design on his part in omitting to state them. The Quickstep, 9 Wall. [76 U. S.] 670; The Clement [Case No. 2,-879]. There is no doctrine of mere technical variance in the admiralty, and subject to the rule above stated, it is the duty of the court to extract the real case from the whole record, and decide accordingly." As in that case, so in this, it is very clear that the libellant had no design in view in omitting to charge specifically as a fault, that the tug was not properly manned; and it is equally clear that the proof on that subject, coming, as it did, from the opposite parties, could not have operated to confuse them.

The remaining objection to a recovery is that, as appears by the proofs, the tug was fully manned according to the custom in this respect of tugs plying on those waters. The rule requiring that tugs, while in active service, should have a wheelsman separate from the officer in charge of her navigation, and that such officer have no other duties to perform, is a salutary one for the protection of life and property and inseparable from the very nature of the service, and no reckless and unsanctioned usage to the contrary can be allowed to do it away or modify it. If such a custom, as is contended, prevails at the mouth of Saginaw river, the sooner it is abandoned the better for the interests of commerce, as well as of tug owners themselves.

Decree for libellant.